# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMNA MOHAMMAD ALI,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT P. SANDERS *et al.*,<br><br>    Defendants. | Civil Action No. 23-3595 (BAH)<br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiff Amna Mohammad Ali, a citizen of Canada, seeks to compel defendants Robert P. Sanders, Consul General of the U.S. Consulate General in Montreal, Marybeth Turner, Deputy Chief of Mission of the U.S. Embassy in Canada, and Antony Blinken, Secretary of the U.S. Department of State, in their official capacities (collectively, "Defendants"), to adjudicate her nonimmigrant visa application, which had been in administrative processing for nearly six months at the time plaintiff initiated this lawsuit. *See* Compl. ¶¶ 10–13, ECF No. 1. Plaintiff claims that defendants have unreasonably delayed adjudication of her visa application, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. *Id.* ¶¶ 24–35. Defendants now move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 7. For the reasons below, defendants' motion is granted.

## I.    BACKGROUND

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

### A.       Statutory and Regulatory Background

A noncitizen who "is the fiancée . . . of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission" may be eligible for a K-1, or "fiancé(e)," visa.  8 U.S.C. § 1101(a)(15)(K)(i). Recipients of a nonimmigrant visa may enter the United States for the sole purposes of marrying the citizen fiancée and applying for permanent residency.  *Id.*; *see also* U.S. DEP'T OF STATE, *Nonimmigrant Visa for a Fianc(é)e (K-1)*, https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html (last visited Aug. 25, 2024).[1]

To obtain a K-1 visa, the non-citizen's American fiancé must first submit a Form I-129F to the Department of Homeland Security's U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1184(d)(1); *see also* USCIS, *I-129F, Petition for Alien Fiancé(e)*, https://www.uscis.gov/i-129f (last updated Aug. 1, 2024).  If USCIS approves the Form I-129F, it is forwarded to the Department of State's National Visa Center ("NVC").  *See* USCIS, *Visas for Fianc(é)es of U.S. Citizens*, https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens (last updated Mar. 23, 2018).  The NVC sends the Form to the "U.S. Embassy or consulate where [the noncitizen] fiancé(e) will apply for a K-1 nonimmigrant visa," which is usually where the noncitizen fiancé(e) lives.  *Id.*  The noncitizen thereafter submits a "properly completed and executed" K-1 visa application to the relevant Embassy or Consulate, 22 C.F.R. § 41.121, and sits for an interview with a consular officer, *see* USCIS, *Visas for Fianc(é)es of U.S. Citizens*.  Following consideration of the visa application and interview with the noncitizen

---

[1]        Judicial notice is appropriately taken of information on the government's official public websites.  *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

fiancé, "the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa." 22 C.F.R. § 41.121(a).

"No visa or other documentation shall be issued . . . if (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]" 8 U.S.C. § 1201(g). A "refusal may be overcome . . . in two instances: when additional evidence is presented, or administrative processing is completed." 9 FAM § 306.2-2(A)(a) (capitalization omitted). As to the former, "[w]hen the applicant has presented additional evidence to attempt to overcome a prior refusal," a consular officer "re-open[s] and re-adjudicate[s] the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa." Id. § 306.2-2(A)(a)(1). A "prior INA 221(g) refusal entered for administrative processing" may also be overcome if the consular officer "determine[s] administrative processing is completed" and receives the additional "needed information." Id. § 306.2-2(A)(a)(2)(a).

### B.    Factual Background

In October 2021, Mohamed Anees Ahmed, a U.S. citizen, submitted a Form I-129 petition with USCIS on behalf of his fiancée and the plaintiff in this action, Amna Mohammad Ali, a "citizen and resident of Canada." Compl. ¶¶ 1–2, 10.[2] USCIS approved the petition on January 21, 2023. Id. ¶¶ 3, 17–18; see also Defs.' Mot. Dismiss, Att. 1, Decl. of Samuel W. McDonald

---

[2]    The page numbers cited in plaintiff's Complaint and Opposition to Defendants' Motion to Dismiss, ECF No. 8, are those applied by the Court's Case Management/Electronic Case Files ("CM/ECF") system, since document page numbers have not been provided in these submissions.

("McDonald Decl.") ¶ 4, U.S. State Dep't Attorney-Adviser, ECF No. 7-1.  Following an interview at the U.S. Consulate General in Montreal on June 12, 2023, plaintiff was informed that her visa application had been "refus[ed]" and "placed in administrative processing," Compl. ¶¶ 20–20, pursuant to Section 221(g) of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1201(g); Defs.' Mot. Dismiss, Att. 1, McDonald Decl. ¶ 7.  Despite numerous inquiries since that date, plaintiff has received no meaningful response or timeline for the processing of her visa application.  Compl. ¶ 23.

As of July 2, 2024, plaintiff's application for a nonimmigrant visa to the United States appears to have been refused, *see* U.S. DEP'T OF STATE, *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx; Compl. ¶ 17 (identifying plaintiff's NVC visa application number), though the same page of the State Department's website suggests that plaintiff's application remains subject to additional administrative processing before a final decision is rendered, *see Visa Status Check* ("If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing.  You will receive another adjudication once such processing is complete.").

Plaintiff alleges that this delay in receiving a final decision on her nonimmigrant visa application has caused her "significant personal, emotional, and financial hardship" that has made it "challenging" for her "to manage her day-to-day tasks and maintain focus at work."  Compl. ¶¶ 6, 8.  Plaintiff contends that she and her fiancé "had to postpone their wedding and family plans," "have not been able to commit to buying a home or deciding where to live," and have remained "concerned about the limited likelihood of starting a family" given "the fertility challenges linked to advanced maternal age."  *Id.* ¶ 7.  Plaintiff further alleges that she and her fiancé are "facing

financial hardship due to the delay," with both "manag[ing] separate living expenses in different countries" and spending $10,000 on travel expenses "since the delay began." *Id.* ¶ 9.

### C.    Procedural History

On December 4, 2023, just under six months after plaintiff's visa application was placed in "administrative processing," plaintiff filed a two-count complaint seeking to compel defendants to adjudicate her visa application.    Compl. ¶ 21.    Plaintiff maintains that defendants retain jurisdiction over her visa application and have a "nondiscretionary duty to review and adjudicate [her] visa application," *id.* ¶ 25, which duty she seeks to enforce with relief under the APA and the Mandamus Act, *see id.* ¶¶ 24–35.    In her prayer for relief, plaintiff seeks the adjudication of her visa application "within fifteen (15) calendar days of this [Court's] order or as soon as reasonably possible," attorney's fees and costs, and "such other and further relief as may be appropriate." *Id.* ¶ 36.

On February 5, 2024, defendants moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. at 1, which motion plaintiff opposes, *see* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 8.    This motion is now ripe for resolution.    *See* Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply"), ECF No. 9.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction," *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (citation omitted), "possessing only that power authorized by Constitution and statute," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. Fed. Commc'n Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008) (citations omitted), federal courts thus "have an

affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (citation omitted).  Absent subject-matter jurisdiction, a case must be dismissed.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court "assume[s] that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016) (citing *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003)), and must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  In addition, to assure itself of its jurisdiction over a claim, "a court may consider materials outside the pleadings[.]" *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (brackets omitted) (quoting *Kareem*, 986 F.3d at 866 n.7).

### B.      Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555 (citations omitted).  Courts

do not, however, "assume the truth of legal conclusions . . . or 'accept inferences that are unsupported by the facts set out in the complaint.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007), and citing *Iqbal*, 556 U.S. at 678, and *Kareem*, 986 F.3d at 865–66). "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271–72 (D.C. Cir. 2019) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.    DISCUSSION

Defendants advance four principal arguments in support of dismissal: that (1) the doctrine of consular nonreviewability bars judicial review; (2) no non-discretionary duty to adjudicate plaintiff's visa application is at issue here; (3) plaintiff lacks Article III standing to sue because she has not suffered a "legally cognizable injury" and her requested remedy will "not alleviate" any alleged injury; and (4) on the merits, that plaintiff "fails to plead a plausible claim of unreasonable delay" under the Mandamus Act and the APA. Defs.' Mot. at 1–2. Each argument is addressed *seriatim*.

### A.    Consular Nonreviewability Doctrine

Defendants argue that plaintiff's suit "runs headfirst into the consular non-reviewability doctrine," Defs.' Mot. at 15, which doctrine "shields a consular officer's decision to issue or withhold a visa from judicial review," *id.* (emphasis omitted) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999))) (other citation omitted); *see also Dep't of State v. Muñoz*, 144 S. Ct. 1812,

1820 (2024) ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular nonreviewability.").  A "narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen,'" *Muñoz*, 144 S. Ct. at 1821 (quoting *Trump v. Hawaii*, 585 U.S. 667, 703 (2018)), and "when a statute expressly authorizes judicial review," *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied*, No. 23-348, 2024 WL 3259699 (U.S. July 2, 2024) (quotation marks omitted) (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1025).

Defendants contend that plaintiff's claim, which they characterize as seeking "to compel action after a consular officer has refused the requested visa," Defs.' Mot. at 15, does not fall within either exception, and thus that the doctrine precludes judicial review, *see id.* at 15–16; *see also* Defs.' Reply at 8–12.  Underpinning this argument is defendants' position that the "refusal" of plaintiff's visa application following her interview at the U.S. Consulate General in Montreal in June 2023 was a "final" decision.  Defs.' Mot. at 17.  This position runs contrary to the allegations in plaintiff's complaint that the "refusal" was "not a final decision" since plaintiff was informed that her application had been "placed in administrative processing."  Compl. ¶¶ 20–22 (citation omitted).

As defendants concede, Judges on this Court, including the undersigned, "have held that the doctrine does not apply in cases where, as here, a consular officer has refused a visa application under 8 U.S.C. § 1201(g)," Defs.' Mot. at 16 (citing *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11–17 (D.D.C. 2022)), but the application in issue remains nonetheless in a status of administrative processing.  While recognizing the distinction between "a consular officer's *substantive* decisions to approve or deny a visa application," to which the consular

8

nonreviewability doctrine applies, and "the *procedural* considerations" of "whether a consular officer has engaged in unreasonable delay in considering an application," to which the doctrine does not, *Al-Gharawy*, 617 F. Supp. 3d at 12–13 (emphasis in original) (citation omitted), the doctrine has been found "not triggered when a consular office has not rendered a final decision and the visa application remains under consideration, including when"—as in this case—"an application is listed as 'rejected' based on it being 'refused for administrative processing,'" *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *4 (D.D.C. Jan. 30, 2024) (quotation marks and citations omitted); *see, e.g.*, *Baygan v. Blinken,* No. 23-cv-2840 (JDB), 2024 WL 3723714, at *4 (D.D.C. Aug. 8, 2024) ("[T]his Court, like other judges in this District, concludes that the § 221(g) refusal for further administrative processing is not a final decision." (citing *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *3–4 (D.D.C. Mar. 28, 2024))); *Aghabeigi v. Dep't of State*, No. 23-cv-1167 (CKK), 2024 WL 1344412, at *8 (D.D.C. Mar. 29, 2024) (rejecting defendants' "argument . . . premised on the incorrect characterization that there has been a final determination about [plaintiff's] application" where plaintiff's "visa remains in administrative processing" and notwithstanding "[d]efendants' assertions to the contrary, [p]laintiff is seeking to compel a determination on his application, not asking the Court to issue another decision on a refused visa application" (emphasis and citations omitted)); *Rostamnia v. Blinken*, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *1 n.2 (D.D.C. Mar. 28, 2024) (similar).[3]

---

[3]    Defendants further argue that even assuming the "refusal" of plaintiff's application under § 221(g) of the INA does not constitute a final decision, the consular nonreviewability doctrine still applies, since the doctrine "shields a consular officer's decision to issue *or withhold* a visa from judicial review," Defs.' Mot. at 15 (emphasis supplied) (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1024), and the consular official in this case "has decided to 'withhold' the visa," Defs.' Reply at 10.  Yet, "*Baan Rao* says nothing about the judicial reviewability of visa processing delay occurring before an officer has made a final decision," *Baygan*, 2024 WL 3723714, at *4 (emphasis and citation omitted), nor, as other Judges on this Court have soundly reasoned, does it "expand[] the doctrine of consular nonreviewability to administrative-processing claims," *Pourabdollah*, 2024 WL 474523, at *5 (collecting cases).

The D.C. Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), "casts some doubt on the reasoning in those decisions," *Asadi v. U.S. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024); *see also* Defs.' Second Not. Suppl. Auth. at 1, ECF No. 12 (describing *Karimova* as "clearly dispositive of the claims here").  In *Karimova*, a "consular officer reviewed [plaintiff's] application and interviewed her," "officially 'refused' her application," and "then placed her application in 'administrative processing in order to verify qualifications for [her requested] visa.'" *Karimova*, 2024 WL 3517852, at *2 (citation omitted).  The D.C. Circuit affirmed the dismissal of plaintiff's complaint seeking an "order compelling the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application," concluding that plaintiff had "not identified an adequate legal basis for that duty."  *Id.* at *6.  The Circuit explained that once "a consular officer makes an official decision refusing to issue a visa," that visa "remains officially refused" even though "the consular officer may choose to place an officially refused application in administrative processing," and even though "the officer can determine" later, based on new information, "that the administrative processing is 'completed' and . . . then re-open and re-adjudicate the applicant's case."  *Id.* at *2 (citation omitted).

*Karimova* leaves on somewhat shaky terrain the body of case law in this District rejecting application of the consular non-reviewability doctrine in circumstances where, as here, a plaintiff's application has been "refused" subject to further administrative processing.  As applied here, *Karimova* "suggests that once 'a consular officer reviewed Plaintiff's application, interviewed her, and ruled that no visa would be granted,' Plaintiff's visa application was 'officially refused' notwithstanding its later placement in administrative processing."  *Asadi*, 2024 WL 3835409, at *4 (brackets omitted) (quoting *Karimova*, 2024 WL 3517852, at *4); *see also Motevali v. Blinken*,

No. 23-cv-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024) (recognizing the same); *Sharifishourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (same).[4]

Nonetheless, accepting plaintiff's allegations as true at the pleading stage, *see Ziglar v. Abbasi*, 582 U.S. 120, 127 (2017), the consular officer's "refusal" of her visa application subject to further "administrative processing" may not have been a final decision on her application, but rather "a temporary measure, signaling that processing [was] ongoing," Compl. ¶ 22.  This is reinforced by evidence in the record of plaintiff's post-"refusal" contact with the Embassy regarding her application.  Specifically, defendants' declarant, an attorney-advisor for the Department of State, submits that after a consular officer informed plaintiff, on June 12, 2023, that her visa application had been "refused" because "additional security screening was required," Defs.' Mot., Att. 1, McDonald Decl. ¶ 7, plaintiff was provided "a link where she could submit answers to questions" regarding her application, *id.*, which information plaintiff promptly provided, *id.* ¶¶ 7–8.  As another Judge on this Court recently found, post-*Karimova*, on similar facts, plaintiff's "further contact with the embassy confirmed [her] application remained pending

---

4        Defendants invoke *Department of State v. Muñoz*, 144 S. Ct. 1812, and *Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024), as support for their position that the consular non-reviewability doctrine bars review of plaintiff's claims, *see* Defs.' Not. Suppl. Auth., ECF No. 10, but neither case mandates departure from reasoning on this Court that the doctrine has no application here.  To begin, in *Goodluck*, the D.C. Circuit expressly did "not consider th[e] question" of consular non-reviewability, since "the government no longer presse[d] an argument" on appeal. *Goodluck*, 104 F.4th at 926 n.3 (citing *Saavedra Bruno*, 197 F.3d at 1159–62).  Meanwhile, in *Muñoz*, the Supreme Court "reaffirmed the doctrine of consular non-reviewability," Defs.' Not. Suppl. Auth. at 1 (citing *Muñoz*, 144 S. Ct. at 1820), holding the doctrine barred judicial review of a consular officer's denial of plaintiff noncitizen's visa application under the "unlawful activity" provision of the INA, "based on a finding that [plaintiff] was a member of MS–13, a transnational criminal gang" and "that his tattoos signified gang membership." *Muñoz*, 144 S. Ct. at 1819 (citing 8 U.S.C. § 1182(a)(3)(A)(ii)).  This Court concurs with the reasoning that "while the Supreme Court in *Muñoz* reiterated the consular nonreviewability doctrine as applied to *final* decisions made by consular officers, it said nothing about whether courts are precluded from reviewing the delay related to processing visa applications," *Baygan*, 2024 WL 3723714, at *5 (citations omitted); *see also Janay v. Blinken*, No. 23-cv-3737 (RDM), --F. Supp. 3d--, 2024 WL 3432379, at *8–10 (D.D.C. July 16, 2024) (recognizing the same).

for administrative processing," even though "the status of her immigrant visa application showed 'Refused.'" *Baygan*, 2024 WL 3723714, at \*4 (citations omitted).

In any event, this Court "need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one," *Motevali*, 2024 WL 3580937, at \*5, since, as set forth *infra* in Part III.D, plaintiff's claims fail on the merits, *see Karimova*, 2024 WL 3517852, at \*6 ("not decid[ing] whether that principle of nonreviewability applies in this case"); *Sharifishourabi*, 2024 WL 3566226, at \*4–5 (in post-*Karimova* suit, assuming without deciding that "the doctrine of consular non-reviewability does not bar review of [plaintiffs'] claims").

### B.    Non-Discretionary Duty

Defendants also claim that "[p]laintiff cannot identify a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application," Defs.' Mot. at 19, and contend that *Karimova* is "dispositive of the claims presented," Defs.' Second Not. Suppl. Auth. at 4.  In *Karimova*, the D.C. Circuit held that plaintiff had failed to "adequately allege[] that the consular officer has [] a duty" to conclusively adjudicate her visa application, where plaintiff "relie[d] on Section 555(b) of the APA"—"and *only* Section 555(b)"— "as the source of the consular officer's alleged duty," but "Section 555(b) does no such thing." *Karimova*, 2024 WL 3517852, at \*1, \*3–6; *see* 5 U.S.C. § 555(b) (providing that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time").  The Circuit reasoned that Section 555(b) does not "contain[] a specific, unequivocal command to act that would justify mandamus or [APA] Section 706(1) relief every time someone complained of delay," *id.* at \*4 (quotation marks and citation omitted), a conclusion it found reinforced by the

fact that (1) "consular officers have broad discretion when adjudicating visa applications," *id.* (citations omitted); (2) plaintiff's "'matter' has already been 'conclude[d],'" *id.* (quoting 5 U.S.C. § 555(b)); and (3) plaintiff's claim "ar[ose] within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power," which "types of claims generally fall outside the Judicial Branch's wheelhouse," *id.* at *5 (brackets, quotation marks, and citations omitted).

As another Judge on this Court recently recognized, *Karimova* certainly "casts some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused,'" *Baygan,* 2024 WL 3723714, at *5 n.1, since although *Karimova* "was confined to the issue of whether the [APA] alone created a duty," Pl.'s Resp. Defs.' Second Not. Suppl. Auth. at 1, ECF No. 13, its "logic may well have broader implications for visa mandamus cases in this District," *Baygan,* 2024 WL 3723714, at *5 n.1.

Nevertheless, *Karimova* is not, as defendants contend, "clearly dispositive of the claims here." Defs.' Second Not. Suppl. Auth. at 1. To begin, although *Karimova* "may be cited as precedent" under D.C. Circuit rules, *id.* at 2 n.1 (quoting D.C. Cir. R. 32.1(b)(1)(B)) (other citation omitted), the panel's decision to issue *Karimova* as an unpublished decision reflects that it saw "no precedential value in that disposition," D.C. Cir. R. 36(e)(2).[5] Moreover, unlike in *Karimova,* plaintiff here relies not only on Section 555(b), but also 8 U.S.C. § 1202(d) of the INA, as the source of defendants' alleged non-discretionary duty. *See* Compl. ¶¶ 25–26.

---

[5]    Pending before the D.C. Circuit in *Karimova* is a motion to publish the opinion pursuant to Circuit Rule 36(f), *see* Mot. to Publish Opinion, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Aug. 13, 2024), but unless and until such motion is granted, *Karimova* remains "not strictly binding," *Baygan,* 2024 WL 3723714, at *5 n.1 (citing D.C. Cir. R. 36(e)(2)).

This Court assumes, without deciding, that a mandatory non-discretionary agency action applies in the form of this statutory requirement that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d); *see Karimova*, 2024 WL 3517852, at *6 (identifying *Da Costa* as "locating [USCIS's] 'nondiscretionary duty' to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)" (citing *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023)); *see also Muñoz*, 144 S. Ct. at 1820 n. 4 (confirming that "the doctrine of consular nonreviewability is not jurisdictional" and that the Supreme Court has "assume[d] without deciding that [the] plaintiffs' statutory claims were reviewable" (emphasis in original) (citation omitted)); *see also Asadi*, 2024 WL 3835409, at *5 ("assum[ing] favorably to Plaintiff that her complaint identifies a clear, non-discretionary duty" even though "Plaintiff largely relies on section 555(b) of the APA as the source of such a duty" since "her claims fail on the merits" (citations omitted)); *Motevali*, 2024 WL 3580937, at *5 (same); *Sharifishourabi*, 2024 WL 3566226, at *6 (same).  This assumption of reviewability allows consideration of the merits of this visa mandamus claim, absent binding precedent supporting plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate visas.  *See, e.g.*, *Khamrabaeva v. Blinken*, No. 22-cv-1219 (RC), 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (surveying different approaches to the question whether 8 U.S.C. § 1202(b) imposes a non-discretionary duty on the government to adjudicate visas); *see also Gomez v. Trump*, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020) (identifying a non-discretionary duty "to afford Plaintiffs the opportunity to apply for immigrant visas at consular interviews" in Section 1202(b) and (d) (citations omitted)).

### C.    Article III Standing

Defendants next assert that plaintiff lacks Article III standing because she "has suffered no legally cognizable injury and cannot demonstrate redressability." Defs.' Reply at 2 (capitalization omitted). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Jibril*, 101 F.4th at 867. Plaintiff has sufficiently alleged each element of Article III standing here.

As to injury in fact, defendants argue that "delay in the State Department's processes" is not itself sufficient to establish injury in fact, and plaintiff's alleged substantive harm of "an inability to travel to the United States and apply for admission" is "not one recognized at common law, by statute, or in the Constitution" since "foreign nationals seeking admission have no constitutional right to entry." Defs.' Mot. at 8 (quoting *Trump*, 585 U.S. at 703); *see also* Defs.' Reply at 3.

Indisputably, "to confer standing a procedural injury . . . must be tethered to some concrete interest adversely affected by the procedural deprivation," *Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2, 3 (D.C. Cir. 2021) (per curiam) (quotation marks and brackets omitted) (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)); *see* Pl.'s Opp'n at 10–11, but contrary to defendants' arguments, *see* Defs.' Mot. at 7–13, plaintiff has sufficiently pleaded injuries to concrete interests. Plaintiff alleges that the delayed adjudication of her visa application has prevented her from "pursu[ing] career opportunities" and "advanc[ing] at her current workplace," and that she has suffered "financial hardship" from having to "manage

15

separate living expenses in different countries" and travel "between Toronto and Seattle." Compl. ¶¶ 8–9; *see also* Pl.'s Opp'n at 10–11 (citing *TransUnion LLC*, 594 U.S. at 425). "Such monetary harms 'readily qualify as concrete injuries under Article III.'" *Baygan*, 2024 WL 3723714, at *4 (quoting *TransUnion LLC*, 594 U.S. at 425) (other citations omitted) (holding plaintiff "sufficiently pleaded an injury in fact" where plaintiff "alleges that the delay in visa adjudication has resulted in monetary harm in the form of her family supporting two households" and "that the separation from her family has resulted in anxiety, stress, and exhaustion" (citation omitted)).

Defendant takes issue with plaintiff's reliance on *TransUnion* since the Supreme Court in that case "does not address the rights of noncitizens located outside of the United States," Defs.' Reply at 3 n.1, but this reliance is fully consistent with authority on this Court holding that a nonresident non-citizen suffers an injury-in-fact in the form of substantive monetary harm resulting from the procedural injury of delayed adjudication of a visa application. *See, e.g.*, *Li v. Heller*, No. 23-cv-3025 (DLF), 2024 WL 3400111, at *3 (D.D.C. July 12, 2024) (citing *TransUnion*, finding injury in fact where plaintiff "highlights that the delay has caused past and ongoing financial hardship . . . and this 'readily qualifies' as a concrete pocketbook harm" (brackets omitted) (quoting *TransUnion*, 594 U.S. at 425)); *Rostamnia*, 2024 WL 1328462, at *3 (finding injury-in-fact where plaintiffs seeking to compel adjudication of nonimmigrant student visa applications "adequately alleged concrete financial and other interests in obtaining and furthering their education"); *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523 (D.D.C. Feb. 7, 2024) (same, where plaintiffs were "unable to access their funded education programs in the United States" or "provide direct family support," which "monetary harm[] readily qualif[ies] as a concrete harm" (quoting *TransUnion LLC*, 594 U.S. at 425) (quotation marks and other citations omitted)); *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *2

(D.D.C. Jan. 17, 2023) (same); *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (same).

Plaintiff's alleged injuries also satisfy the remaining two prongs of Article III standing, in that injury was allegedly "likely caused by the defendant" and "would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61). First, as to causation, the "State Department and its consular officers alone are responsible for conducting interviews and rendering decisions on visa applications," *Li*, 2024 WL 3400111, at *3 (brackets, quotation marks, and citation omitted), and plaintiff alleges that "due to the delay" in adjudicating her application, she has suffered "financial hardship," Compl. ¶ 9.

Second, plaintiff's injuries would also "likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61). Defendants contend, based on their position that "the United States has refused the visa application," that a judicial order "cannot remedy Plaintiff's supposed injuries" since plaintiff "pleads nothing in the Complaint that forcing another decision now would lead to a different result." Defs.' Mot. at 14 (citation and capitalization omitted); *see also* Defs.' Reply at 4. As addressed *supra* in Part III.A, however, this Court assumes that plaintiff "seek[s] the completion of administrative processing, not the re-adjudication of already-rendered decisions," *Rostamnia*, 2024 WL 1328462, at *3 (citations omitted), and plaintiff's injuries accordingly "may be redressed with an order to complete that review more expeditiously," *Pourabdollah*, 2024 WL 474523, at *4 (citation omitted) (concluding "plaintiffs' injuries are also redressable" in suit where plaintiffs "pled that their applications are still pending administrative processing" (quotation marks and citations omitted)); *see also Baygan*, 2024 WL 3723714, at *4 ("disagree[ing] with the State Department's characterization of the § 221(g) refusal of [plaintiff's] application for further administrative processing as a final decision"

and concluding "[a]n order instructing the State Department to timely adjudicate [plaintiff's] visa application would thus redress the alleged injury—hardship stemming from the delay in administrative processing" (emphasis and citation omitted)).

Defendants additionally argue that Secretary of State Antony J. Blinken "should be dismissed" from this suit "because he has no role in re-adjudicating" plaintiff's visa application and "cannot re-adjudicate an application for a visa." Defs.' Mot. at 5. "Although not characterized as such by Defendants, this argument raises redressability concerns." *Rostamnia*, 2024 WL 1328462, at *4 (citations omitted). Defendants contend that since "consular officers [possess] exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations,'" Secretary Blinken "cannot provide the relief requested." Defs.' Mot. at 5–6 (emphasis, quotation marks, and capitalization omitted) (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1024).[6]

Yet, courts in this district have repeatedly rejected this argument. *See, e.g.*, *Li*, 2024 WL 3400111, at *4 ("While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time[.]" (citation omitted)); *Rostamnia*, 2024 WL 1328462, at *4 (holding that "[b]ecause the Secretary of State, and by extension other officials in the State Department, have the authority to direct consular officials to adjudicate Plaintiffs' applications, they are properly named in the lawsuit"); *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024) (rejecting argument that "Secretary Blinken cannot

---

[6]    Defendants contend that plaintiff "makes no specific argument as to why" Secretary Blinken "is a proper defendant" or why plaintiff's claims are redressable, and thus has forfeited these arguments. Defs.' Reply at 1, 4 (citing *Colindres*, 71 F.4th at 1025). Although "a court may . . . . treat unaddressed arguments as conceded," *Rostamnia*, 2024 WL 1328462, at *3 n.4 (emphasis and citation omitted), it "is not required" to do so, and this Court declines to treat defendants' arguments as conceded here, *id.* (citation omitted) (in suit seeking to compel adjudication of nonimmigrant student visa applications, "declin[ing] to treat Defendants' jurisdictional arguments as conceded").

adjudicate an application for a visa, so he cannot redress the plaintiffs' alleged injuries" since "the INA's proscription against the Secretary of State directing the outcome of a particular visa adjudication does not extend to his directing [consular officers] to decide pending applications within a reasonable time" (alteration in original) (quotation marks and citations omitted)); *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023) (similar); *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023) (similar); *Al-Gharawy*, 617 F. Supp. 3d at 10–11 (similar). Defendants neither acknowledge this body of case law nor offer any reason to depart from this uniform conclusion here.

While the Secretary may not, consistent with the INA, direct the grant or denial of a visa application, *see Baan Rao*, 985 F.3d at 1024 ("A *consular officer* . . . has the authority to grant, deny or revoke any visa." (emphasis supplied) (citation omitted)), "[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her," *Al-Gharawy*, 617 F. Supp. 3d at 10 (emphasis in original) (citation omitted); *see also Baygan*, 2024 WL 3723714, at *3 (recognizing the same and declining to dismiss Secretary Blinken). In this case, where plaintiff does not challenge a consular officer's adjudication of her visa application but seeks only its timely adjudication, *see* Compl. ¶ 36, "nothing precludes [the Secretary] from directing the consular officers to decide [the] pending applications 'within a reasonable time,' as the APA requires," *Rostamnia*, 2024 WL 1328462, at *4 (citation omitted). Given that Secretary Blinken "could play a role in the pace of visa adjudications, an order from this court directing him to move more quickly would likely redress Plaintiff['s] harms." *Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) (citing *Lujan*, 504 U.S. at 561). The Secretary of State is thus a properly

named defendant, plaintiff's claims are redressable, and plaintiff has established Article III standing.

### D.    Adjudication Delay Is Not Unreasonable

Finally, on the merits, defendants contend that plaintiff's allegations about the delay in adjudicating her visa application are insufficient to state a plausible claim for relief because the roughly six-month delay at issue is not unreasonable. *See* Defs.' Mot. at 26–34.[7] "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable." *Da Costa*, 80 F.4th at 340 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and citing *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six so-called "*TRAC*" factors for consideration:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

---

[7]    Although plaintiff alleges, without further specification, a delay by defendants of "nearly thirteen months" in the adjudication of her visa application, Pl.'s Opp'n at 6, this is incorrect.  Delay is calculated by the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint, *see, e.g.*, *Armah v. U.S. Dep't of State*, No. 22-cv-1714 (BAH), 2024 WL 2721634, at *4 n.4 (D.D.C. May 28, 2024); *Oduor v. Blinken*, No. 23-cv-908, 2024 WL 1406548, at *4 (D.D.C. Mar. 29, 2024); *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023); *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022), which here was between June 12, 2023, when plaintiff was informed that her visa application was placed in administrative processing," *see* Compl. ¶¶ 20–21; *see also* Defs.' Opp'n, Att. 1, McDonald Decl. ¶ 7, and December 4, 2023, when plaintiff filed this suit, *see* Compl., with this time period of alleged delay amounting to just under six months.

*Telecomms. Rsch. & Action Ctr. v. F.C.C. ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations and quotation marks omitted; formatting modified); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *id.*)); *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024) (per curiam) (same).  This standard applies to claims of unreasonable delay under the APA. *See Norton*, 542 U.S. at 63–64; *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024).

At the threshold, plaintiff tries to avoid application of the *TRAC* factors, arguing that due to the "fact-intensive nature" of the *TRAC* inquiry, evaluation of the factors is not appropriate at the motion to dismiss stage.  Pl.'s Opp'n at 16–17.  Yet, application of the *TRAC* factors is appropriate here, as factual allegations have been fulsomely supplied and specific dates when relevant agency action occurred are undisputed.  *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2 (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *Da Costa*, 80 F.4th at 339–46 (same); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting "the majority view in this District [] that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay").  Here, as defendants correctly argue, *see* Defs.' Reply at 12–14, the record provides sufficient discernible and undisputed facts to evaluate the *TRAC* factors and determine whether plaintiff's complaint alleges facts sufficient to state a plausible claim for unreasonable delay.  In this case, the agency's delay in adjudicating plaintiff's visa is not unreasonable.

### 1. *TRAC* Factors 1 and 2

The first two *TRAC* factors examine "the extent of and reasons for" agency delays. *Afghan & Iraqi Allies*, 103 F.4th at 816. The first *TRAC* factor—whether the agency follows a rule of reason in processing visas—is among the "most important in this case," *Da Costa*, 80 F.4th at 340; *see also Afghan & Iraqi Allies*, 103 F.4th at 816, and is often considered together with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1 (citing *TRAC*, 750 F.2d at 80), because the second factor "gives content to the first," *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)). Both factors weigh in defendants' favor.

The D.C. Circuit has explained that, in assessing the first *TRAC* factor, "whether an agency follows a rule of reason, we evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Consideration of whether agency adjudication delays are unreasonable necessarily implicates the statutory deadlines imposed by Congress, which is the second *TRAC* factor, and "the level of disproportionality we have previously held sufficient to grant relief." *Id.* (citation omitted).

As defendants point out and as plaintiff concedes, Congress has set "no statutory or regulatory timeframe within which the State Department or a consular officer must re-adjudicate visa applications," Defs.' Mot. at 28; *see* Pl.'s Opp'n at 19, but instead gives agencies "wide discretion" in their immigration processing timelines, Defs.' Opp'n at 28 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)); *see also Da Costa*, 80 F.4th at 339–40 (finding "the absence of a statutory deadline . . . also favor[s] dismissing the claims"); *Didban v. Pompeo*, 435

F. Supp. 3d 168, 176 (D.D.C. 2020) ("Congress has supplied no timeline for processing waiver applications.").

To "supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80 (citation omitted), plaintiff invokes 8 U.S.C. § 1571(b), *see* Pl.'s Opp'n at 19–20, in which "lawmakers expressed 'the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application,'" *Da Costa*, 80 F.4th at 344 (quoting Immigr. Servs. & Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1251, 1262 (codified at 8 U.S.C. § 1571(b)). In *Da Costa*, the D.C. Circuit found this factor "somewhat favor[ed] Plaintiffs" who had "waited longer than 180 days," *id.*, but unlike in *Da Costa*, the alleged processing delay here of less than six months fits squarely within Section 1571(b)'s "aspirational statement" of 180 processing days, *id.* (citation omitted). In any event, Section 1571(b) is not the measure, as a legal matter, of the reasonableness of agency delay.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (citation omitted). Courts have drawn no bright lines to determine reasonableness, but "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." *Didban*, 435 F. Supp. 3d at 176 (quotation marks omitted) (quoting *Trump*, 58 U.S. at 702–03). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 19-cv-2524 (SVW) (JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (citation omitted)); *see also Tahavori*,

2024 WL 1328546, at *4 (citing cases noting the same).  Notably, in *Da Costa*, the D.C. Circuit affirmed dismissal of a visa applicant's unreasonable delay claim, concluding that, while "undoubtedly maddening," the four-and-a-half-year delay was "not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications."  80 F.4th at 339–340, 342.

Plaintiff makes no effort to distinguish this precedent, contending rather that if defendants have "merely placed [plaintiff's] petition on the back burner . . . while other cases were put ahead in line, the delay is likely unreasonable."  Pl.'s Opp'n at 20.  Plaintiff offers merely speculation in support of this claim that defendants may not have been "diligently processing [her] visa," *id.*, and fails to consider the strain on agency resources and the context of the relevant agency action, both of which factors are critical to the determination of reasonableness, *see Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay." (citing *Mashpee*, 336 F.3d at 1100, 1102)).

In 2020, about three years before plaintiff filed the instant complaint, U.S. consulates and embassies shut down across the globe due to the COVID-19 pandemic.  The visa backlog due to the COVID-19 pandemic and strain on agency resources following the health crisis is important context with an impact on the processing times for visa applications.  These circumstances weigh in defendants' favor in the *TRAC* factor analysis.  *See Da Costa*, 80 F.4th at 342 (citing global pandemic as consideration in assessing first *TRAC* factor); *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) ("finding that operational delays due to the COVID-19 pandemic favor the [g]overnment on the first two [*TRAC*] factors" (citations omitted)); *see also Kahenya*, 2024 WL 1253854, at *3 (same); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB),

2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (same); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19- cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same).

Here, plaintiff's visa petition was placed in administrative processing on June 12, 2023, less than six months before she filed suit on December 4, 2023. *See* Compl. ¶¶ 20–21; *see also* Defs.' Mot., Att. 1, McDonald Decl. ¶ 7. This less than six-month delay—"far shorter than what courts in this District have routinely concluded does not constitute unreasonable delay," Defs.' Mot. at 29 (citations omitted)—is simply not unreasonable, *see, e.g., Li*, 2024 WL 3400111, at *6 (concluding *TRAC* factors 1 and 2 weigh in defendants' favor where, at the time plaintiff filed her complaint, plaintiff had "waited four months (now closer to thirteen months)" and "[f]inding an unreasonable delay here, when less time has passed than in any of the above examples, would upset the rule prior cases have established" (citations omitted)). Even measuring the delay from the time plaintiff's visa application was filed, in October 2021, *see* Compl. ¶ 17, only about 26 months passed between then and the date plaintiff filed her complaint—"a long time, to be sure, but well within the two-to-three year period that judges in this District have consistently held does not amount to unreasonable delay," *Janay v. Blinken*, No. 23-cv-3737 (RDM), --F. Supp. 3d--, 2024 WL 3432379, at *11 (D.D.C. July 16, 2024) (quoting *Tahavori*, 2024 WL 1328546, at *5).

Taken altogether, the first and second *TRAC* factors favor defendants.

### 2. *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80 (citations omitted). As plaintiff concedes, this factor "carries significant weight" in the *TRAC* analysis, Pl.'s Opp'n at 21 (citing *Mashpee*, 336 F.3d at 1100), and weighs heavily in defendants' favor here, particularly in the context of reducing the accumulated backlog from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Mukkavilli*, 2024 WL 1231346, at *2 (recognizing the same). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Armah v. U.S. Dep't of State*, No. 22-cv-1714 (BAH), 2024 WL 2721634, at *8 (D.D.C. May 28, 2024) (quoting *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005)).

Plaintiff advances no practical explanation to overcome the logistical issue, given limited government resources and orderly processing methods, leading to the conclusion that expediting plaintiff's application would further delay other K-1 visa applications. *See* Pl.'s Opp'n at 21–22. While plaintiff argues that she "is not asking to be put ahead in line" and that "there is insufficient evidence in the record as to the existence of a queue, Plaintiff's place in the queue, or procedures for determining the order of adjudications," *id.* at 21 (citations omitted), expediting review in plaintiff's case "would necessarily come at the expense of other similarly situated applicants, unlike broader relief that would avoid line-jumping concerns," *Da Costa*, 80 F.4th at 344 (quotation marks and citation omitted); *see also Asadi*, 2024 WL 3835409, at *8 (in suit seeking to compel adjudication of K-1 visa application, finding fourth *TRAC* factor favors the government, where "granting Plaintiff her requested relief would require the State Department to "reorder its priorities in a case where the agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way" (brackets and quotation marks omitted) (quoting *In re Barr Lab'ys.*, 930 F.2d at 76)); *Li*, 2024 WL 3400111, at *6 (same, where "expediting the delayed action for

[plaintiff] could simply foist the delay upon other applicants, contrary to the State Department's priorities"); *see* U.S. DEP'T OF STATE, *Immigrant Visa Interview-Ready Backlog Report*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last updated Aug. 2024) (providing data and information about the backlog in visa applications still faced by the State Department post-pandemic).[8]  Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys, Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.

### 3.  *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated.  *TRAC*, 750 F.2d at 80 (citations omitted); *see Da Costa*, 80 F.4th at 344–45 (considering *TRAC* factors three and five together).  As discussed, *supra* in Part III.D.2, in connection with *TRAC* factor 4, the third factor looks to the impact and potential prejudice on others from granting plaintiff's demanded relief and, here, that requires attention to the "many others [who] face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quotation marks and citations omitted).  Catapulting plaintiff to the front of the line by court ordered priority would necessarily push other noncitizens back.

Putting aside the interests of other noncitizens potentially affected by expediting plaintiff's application, plaintiff alleges that she has suffered "personal, emotional, and financial hardship" as

---

[8]       Plaintiff cites pre-pandemic, out-of-circuit district court cases in support of her argument that she "should not be penalized for a lack of agency resources," Pl.'s Opp'n at 22 (collecting cases), yet fails to address the logistical reality that other visa applications would be delayed if defendants expedited attention on her application, *see id.* at 18–19, 21–22; *see also Da Costa*, 80 F.4th at 343 ("Plaintiffs' argument that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works.").

a result of the delay, Compl. ¶ 6, including harm to her professional advancement and to family planning goals, *id.* ¶¶ 7–8, which has left her "living in limbo," Pl.'s Opp'n at 20 (citation omitted). Yet, as defendants respond, plaintiff "fails to plead the type of harms that could make the third and fifth *TRAC* factors plausibly tilt in Plaintiff's favor." Defs.' Mot. at 33–34 (citing *Da Costa*, 80 F.4th at 345). Indeed, the D.C. Circuit has found that the third and fifth *TRAC* factors do not favor noncitizens where, as here, the noncitizen failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter" due to delays in immigration benefits adjudication, *Da Costa*, 80 F.4th at 345. The Circuit also recognized that alleged financial harms and "uncertainty that results any time an individual must continue to wait to secure a benefit," which may prevent a noncitizen from "planning . . . and making arrangements for [her] famil[y]," *id.* at 344–45 (second alteration in original) (citation omitted)—similar to plaintiff's allegations here, *see* Compl. ¶¶ 8–9—"are insufficient to tip *TRAC* factors three and five in [plaintiff's] favor," *Da Costa*, 80 F.4th at 345.

Thus, considering the nature of the harm alleged to be experienced by this particular plaintiff due to further delay in adjudicating her visa application, *TRAC* factors 3 and 5 weigh in defendants' favor.

### 4. *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (citation omitted), and is neutral absent "plausible evidence of bad faith," *Afghan & Iraqi Allies*, 103 F.4th at 820; *Da Costa*, 80 F.4th at 345–46. Plaintiff "does not allege bad faith," Pl.'s Opp'n at 22, and despite plaintiff's frustration with the visa application process

given her separation from her fiancé, as plaintiff concedes, the delay alone does not demonstrate any agency misconduct.

### 5. *TRAC* Factors Considered in Totality

Taking all six *TRAC* factors together, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA. In other cases, delays in visa processing of even longer duration than presented here have resulted in the same conclusion, and this Court applies the same reasoning to the adjudication of plaintiff's visa application. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding a four-and-a-half year processing delay does not "itself establish[] that USCIS lacks a rule of reason"); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (finding the nearly three-year "delay in processing . . . does not reach the length that courts have found unreasonable"); *Rahimian*, 2023 WL 143644, at *7 (reaching the same conclusion based on visa processing delay of forty-one months); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (same, based on visa processing delay of thirty months); *Zaman*, 2021 WL 5356284, at *6–7 (same, based on visa processing delay of forty-two months). The context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder her visa application in the queue, all support the conclusion that the delay in adjudication of plaintiff's visa application is not unreasonable.

While appreciating the hardship for plaintiff and her fiancé as a result of their separation, the Court also recognizes that countless other noncitizens are facing similar or even worse timetables as they await immigration decisions. *See Da Costa*, 80 F.4th at 346 (affirming dismissal where "[r]uling in favor of Plaintiffs would require USCIS to process Plaintiffs' petitions ahead of those of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated"); *Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would

have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

Plaintiff's complaint thus must be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  An Order consistent with this opinion will be filed contemporaneously.

Date:  August 26, 2024

_____

**BERYL A. HOWELL**
United States District Judge